

# IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-DI-29

## In the Matter of
## Theodore E. Rokita,
*Respondent.*



FILED

Jul 18 2025, 10:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Decided: July 18, 2025

Attorney Discipline Action

---

**Opinion by Justice Molter**

Chief Justice Rush and Justice Massa concur.
Justice Slaughter concurs with separate opinion.
Justice Goff concurs with separate opinion.

**Molter, Justice.**

This is an attorney discipline matter over which the Indiana Constitution grants our Court original jurisdiction. Respondent, Theodore Rokita, is the Attorney General of Indiana. And before us is the second complaint the Indiana Disciplinary Commission has filed stemming from public comments he made around three years ago about his office's investigation of Dr. Caitlin Bernard following news coverage of an abortion she performed for a ten-year-old rape victim from Ohio.

In the first complaint, the Commission alleged those comments violated rules (1) forbidding attorneys involved in investigations from making public comments that are likely to prejudice a legal proceeding; (2) prohibiting statements with no legitimate litigation purpose that embarrass or burden another; and (3) requiring compliance with confidentiality statutes for investigations in certain regulated professions. At the same time the Commission filed its complaint, the parties jointly submitted an agreement to us: the Commission would drop its confidentiality charge in exchange for Respondent agreeing to accept responsibility for violating rules addressing the Commission's other two concerns, all conditioned on our Court accepting the agreement. They also agreed the appropriate sanction would be a public reprimand. Our Court, through a majority (but closely divided) vote, accepted the agreement and issued the reprimand as they proposed.

After we accepted the agreement, Respondent issued a press release and made other public statements about the agreement and reprimand. Now, in the Commission's second complaint against Respondent, the Commission alleges those statements contradicted their agreement by denying responsibility. And that, the Commission contends, reveals Respondent wasn't truthful when he told us he was accepting responsibility, which in turn violates our professional rules requiring attorneys to be truthful.

In response, Respondent has moved to dismiss the complaint. He says he did and does accept responsibility, and the Commission misunderstands or mischaracterizes his statements about the reprimand. He argues we should dismiss the Commission's complaint because he

believes (1) he has said nothing that contradicted his representations to our Court, including that he was accepting responsibility for violating the Rules of Professional Conduct; (2) sanctioning him for the public statements the Commission has identified would violate his constitutionally protected speech rights to discuss his views about the disciplinary process; and (3) sanctioning him for those statements would violate our Indiana Constitution's separation of powers by limiting what an executive branch official can say to the public about subjects that relate to his work. The Commission replies, in essence, that Respondent's public statements did deny responsibility, and his legal arguments for dismissal misapprehend their theory of the case: the Commission is seeking to discipline him for what he said to us, not the public; and the Commission is pointing to Respondent's public statements only as evidence that he wasn't telling us the truth.

It is exceptionally rare for respondents to file motions to dismiss disciplinary complaints, and even rarer that we grant them. Here, as we explain in greater detail below, we deny Respondent's motion to dismiss without prejudice to him reasserting his defenses later because we conclude the arguments he makes in his motion are better addressed through the hearing process and our subsequent review. While he raises legal issues, they are intertwined with his defenses to the Commission's charges and considerations for narrowing the Commission's potential arguments. But the Commission has not yet had an adequate opportunity to sustain its burden to prove by clear and convincing evidence, and within the confines of our state and federal constitutions, that Respondent violated the Rules of Professional Conduct. Nor, for that matter, has Respondent yet had an opportunity to present his defenses fully.

Having denied the motion to dismiss, we will follow our typical practice of appointing a hearing officer, although we will accommodate Respondent's proposal to use a three-member hearing panel—drawn from the northern, central, and southern regions of our state—to further protect against a perception that political pressure could influence a single officer's consideration. We also encourage that panel to discuss with the parties whether mediation would be an appropriate next step given that

their disagreement, though vehement, is narrow and stems from their previous agreement.

Both sides have also filed discovery-related motions. Given our other procedural rulings, we grant the Commission's Motion to Stay Discovery Until Ruling on Respondent's Motion to Dismiss and Appointment of Hearing Officer, and we refer all discovery disputes to the hearing panel. That includes the Respondent's Motion to Compel Discovery and the Commission's Motion for Protective Order.

Finally, Respondent is ordered to file an answer to the Commission's complaint within thirty days of this opinion.

# Background

Because this second disciplinary complaint stems from the first, we recount the history. *See generally Matter of Rokita*, 219 N.E.3d 733 (Ind. 2023). On July 1, 2022, the Indianapolis Star published an article titled "Patients Head to Indiana for Abortion Services as Other States Restrict Care," which reported that Dr. Bernard had performed an abortion on a ten-year-old rape victim from Ohio who was around six weeks pregnant. The story gained nationwide attention, and the Attorney General's office began investigating whether Dr. Bernard complied with various privacy and reporting requirements. That investigation included requesting from the Indiana Department of Health all termination of pregnancy reports for the previous thirty days, notifying Dr. Bernard that the Attorney General's office had opened an investigation, and emailing the Indiana Department of Child Services to find out whether a child abuse report had been filed related to the rape victim. Shortly after all that, Respondent appeared on a national television program.

During Respondent's segment, the host characterized recent news reports as conveying that Dr. Bernard had a history of failing to report abuse cases, and he asked: "So, is a criminal charge next? And, will Dr. Bernard lose her license? . . . Let's ask the Indiana Attorney General, Todd Rokita." Conditional Agreement ¶¶ 12–14. Respondent's discussion in response included saying:

And then we have this abortion activist acting as a doctor—
with a history of failing to report. So, we're gathering the
information. We're gathering the evidence as we speak, and
we're going to fight this to the end, including looking at her
licensure if she failed to report. In Indiana, it's a crime to not
report—to intentionally not report.

*Id.* ¶ 15 (transcript references to "uh" omitted). After the show,
Respondent made other public statements discussing his office's
investigation of Dr. Bernard.

Respondent's public statements about his office's investigation of
Dr. Bernard triggered the Commission's first complaint, which reflected
three primary concerns. First, the Commission believed the remarks ran
afoul of rules limiting an attorney's out-of-court statements that risk
materially prejudicing a legal proceeding. Second, the Commission
believed the comments violated a rule prohibiting lawyers from using
tactics that have no substantial purpose other than to embarrass or burden
someone. And third, the Commission believed the comments violated
statutory confidentiality requirements for investigations into complaints
for certain regulated professions.

The Commission resolved its concerns through a conditional agreement
with Respondent, which was conditioned on our Court approving the
agreement. The Commission agreed to dismiss the charge that
Respondent violated certain confidentiality requirements (Count 3) in
exchange for Respondent agreeing to admit his comments exceeded the
limits on extrajudicial statements (Count 1) and tactics with no purpose
other than to embarrass or burden (Count 2). Both sides agreed the
appropriate sanction was a public reprimand.

The Commission and Respondent also explained why they reached this
agreement. Rule 3.6(a) of the Indiana Rules of Professional Conduct
provides:

A lawyer who is participating or has participated in the
investigation or litigation of a matter shall not make an

extrajudicial statement that the lawyer knows or reasonably
should know will be disseminated by means of public
communication and will have a substantial likelihood of
materially prejudicing an adjudicative proceeding in the
matter.

And our rules recognize a rebuttable presumption of material prejudice
for statements related to a party's "character, credibility, reputation or
criminal record." Prof. Cond. R. 3.6(d)(1). The parties agreed "that
Respondent's use of the phrase 'abortion activist acting as a doctor – with
a history of failing to report' could reasonably be considered a statement
about the doctor's character, credibility, or reputation in violation of Rule
3.6(a) because of the presumption raised by Rule 3.6(d)(1)." Conditional
Agreement ¶ 18.

Next, Rule 4.4(a) provides: "In representing a client, a lawyer shall not
use means that have no substantial purpose other than to embarrass,
delay, or burden a third person." Prof. Cond. R. 4.4(a). The parties agreed
"a reasonable person could conclude that Respondent's use of the phrase
'abortion activist acting as a doctor—with a history of failing to report'
had 'no substantial purpose other than to embarrass or burden' the doctor
in violation of Rule 4.4(a)." Conditional Agreement ¶ 21.

As for the Commission's allegation that Respondent violated
confidentiality protections, they agreed to disagree. But they both thought
"a trial on the merits . . . would not likely result in a different sanction
than the already agreed to proposed sanction on Counts 1 and 2," so they
at least agreed "in the interests of judicial economy" to dismiss that charge
in exchange for Respondent's admission of the other two charges.
Conditional Agreement at 5. Among the parties' reasons for agreeing that
a public reprimand was the appropriate sanction was that "Respondent
has accepted responsibility for his misconduct." *Id.*

Our rules require conditional agreements to include an affidavit from
the respondent attesting to the following:

(i) The respondent's consent is freely and voluntarily given, and the respondent is aware of the implications of giving his or her consent;

(ii) The respondent is aware that there is a pending proceeding alleging grounds for the respondent's discipline, the nature of which shall be specifically set forth;

(iii) The respondent acknowledges that the material facts set forth in the Conditional Agreement are true; and

(iv) The respondent acknowledges that if prosecuted, the respondent could not successfully defend himself or herself.

Ind. Admission and Discipline Rule 23(12.1)(b)(3). As required, Respondent submitted an affidavit swearing to each of those things.

When parties present us with a conditional agreement, we have three options:

(i) approve the Conditional Agreement and enter an order for the discipline conditionally agreed to;

(ii) notify the Disciplinary Commission and the respondent that [we] decline[] to approve the Conditional Agreement; or

(iii) submit to the Disciplinary Commission and the respondent a proposed disposition for discipline [we] deem[] appropriate.

*Id.* R. 23(12.1)(b)(4).

Our Court divided over which option to choose. The majority chose the first option—accepting the agreement and entering an order for the agreed discipline—along with a per curiam opinion explaining the reasons. That opinion explained that our Court had previously "issued public reprimands for misconduct of a similar nature" in two other cases and that mitigating factors included Respondent's "acceptance of

responsibility," "his cooperation with the disciplinary process," and his "lack of prior discipline over a lengthy career." *Matter of Rokita*, 219 N.E.3d at 734, 735. Two justices dissented, noting they "would reject the conditional agreement, believing the discipline to be too lenient based on the Respondent's position as Attorney General and the scope and breadth of the admitted misconduct." *Id.* at 735.

Typically, that would be the end of the matter. The Court approved the agreement and admonished Respondent as both sides proposed, so the matter was concluded. But after we accepted the parties' agreement, Respondent issued a press release and made other public statements about the conditional agreement and reprimand. Those comments triggered a second complaint from the Commission, which is the subject of the motion to dismiss now before us.

This time, the Commission alleges Respondent's comments reveal he wasn't being truthful when he told us he was accepting responsibility. To illustrate, the Commission highlights these excerpts from Respondent's press release:

> a. "First things first: I deny and was not found to have violated anyone's confidentiality or any laws."

> b. "Despite the failed attempt to derail our work . . . it all boiled down to a truthful 16-word answer I gave a year ago during an international media storm caused by an abortionist who put her interests above her patient's. I received a 'public reprimand' for saying that – '. . . we have this abortion activist acting as a doctor – with a history of failing to report.'"

> c. Immediately after the statement in subparagraph (b), Respondent stated in relevant part in the next two paragraphs:

>> The media, medical establishment and cancel culture, all on cue, supported - and then attempted to vindicate - the abortionist who intentionally exposed personal

health information at a political rally all in furtherance
of their shared ideological and business interests.

These liberal activists would like to cancel your vote
because they hate the fact I stand up for liberty. . . .

d. In the paragraph following the statements in subsection (c),
Respondent stated:

Having evidence and explanation for everything I said,
I could have fought over those 16 words, but ending
their campaign now will save a lot of taxpayer money
and distraction, which is also very important to me.

e. "In order to resolve this, I was required to sign an affidavit
without any modifications."

Complaint ¶ 35 (quoting Press Release, Office of the Indiana Attorney
General (November 2, 2023)).

That brings us to the pending motion to dismiss.

## Motion to Dismiss

Respondent does not deny making those statements, but he argues they
do not warrant attorney discipline, and he has moved to dismiss the
complaint. While our rules forbid filing motions to dismiss with the
hearing officer, Admis. Disc. R. 23(14)(a)(3), they do not forbid us from
considering them, although it is exceptionally rare that we grant a
respondent's motion to dismiss a disciplinary complaint. We are aware of
only a couple instances where our Court either dismissed a complaint or
the Commission moved to dismiss its complaint because we declined to
appoint a hearing officer. *See* Order, *Matter of Lee*, No. 49S00-0705-DI-195
(Ind. Aug. 1, 2007) (dismissing the complaint and explaining that the
alleged inadequate supervision of an associate "occurred more than eight
years ago and the complaint provides no particulars of how [the attorney]

allegedly failed in supervising the associate's conduct"); Order, *Matter of Haith*, No. 49S00-9707-DI-422 (Ind. Dec. 19, 1997) (granting the Commission's motion to dismiss the complaint after no hearing officer was appointed). Usually, we summarily deny motions to dismiss disciplinary complaints. *See, e.g.*, Order, *Matter of Hill*, No. 19S-DI-156 (Ind. Apr. 29, 2019) (denying Respondent's Motion to Decline Appointment of Hearing Officer or Hearing Panel).

Here, we have considered Respondent's motion, but we deny it because we conclude his arguments are better considered in the normal course of attorney discipline litigation—first through hearing proceedings and then through review in our Court. Respondent's arguments for dismissal fall into two categories: (1) reasons he believes the Commission cannot prove its claims, and (2) reasons he believes our state and federal constitutions do not allow those claims. We address each category in turn.

First, Respondent argues that his statements "in no way contradicted the Conditional Agreement or Affidavit." Respondent's Mot. to Dismiss at 3. He says his statement that he denied "and was not found to have violated anyone's confidentiality or any laws" referred to the Commission's Count 3, which had alleged he violated confidentiality laws and which the Commission agreed to dismiss. *Id.* at 4. He also argues his statements that the dispute all "boiled down to a truthful 16-word answer," that he had "evidence and explanation for everything [he] said," that he "could have fought over those 16 words," and that he wanted to end the distraction and save taxpayer money were all consistent with his sworn statement that he would not have been able to successfully defend himself in the disciplinary action. *Id.* at 5. And for that point, he emphasizes that saying he could have defended himself is not the same as saying he could have defended himself *successfully*.

As for his statement that he was "required to sign an affidavit without any modifications," he argues that is true—our rules require that—and he says that is consistent with his statement that he signed the affidavit and conditional agreement "knowingly, freely, and voluntarily," to which our rules also required him to attest. *Id.* at 6–7. He also argues that other statements the Commission points to where Respondent said he did

nothing wrong were statements about other complaints made to the Commission that Respondent believes were politically motivated. *See id.* at 9. And he believes his other public statements that he "'remain[s] responsible for everything [his] office and [he] do[es] and say[s]' and that 'he s[aw] this situation as an opportunity to learn and improve for the next time'" confirm his sincerity when he told our Court that he was accepting responsibility. Respondent's Reply in Supp. of Mot. to Dismiss at 23 (quoting Press Release, Office of the Indiana Attorney General (Sept. 18, 2023)) (alterations in original).

These are all defenses available to Respondent when he responds to the Commission's efforts to sustain its burden to prove attorney misconduct by clear and convincing evidence. And the Commission acknowledges that, stating in response that "Respondent of course may dispute the Commission's view of the information averred in the Disciplinary Complaint, as well as the meaning to give to various items of potential evidence." Commission's Br. in Opp'n to Respondent's Mot. to Dismiss at 15. But we reach no judgment at this stage about those allegations or defenses because it is premature to evaluate them through a motion to dismiss where the parties are arguing over competing inferences that may depend on evidence outside the current record. *Cf. Hoosier Contractors, LLC v. Gardner*, 212 N.E.3d 1234, 1239 (Ind. 2023) ("When evaluating a Rule 12(B)(6) motion, reviewing courts take the alleged facts to be true, consider the allegations in the light most favorable to the non-movant, and draw every reasonable inference in that party's favor.").

Second, Respondent argues that disciplining him for expressing his views about the disciplinary process would be unconstitutional. One reason, he believes, is because that would violate his constitutionally protected speech rights. Acknowledging those speech rights, the Commission confirms it "has no dispute with Respondent's right to issue a press release or to discuss the Conditional Agreement and the resolution of his disciplinary case." Commission's Br. in Opp'n to Respondent's Mot. to Dismiss at 22. But the Commission's theory of the case, at least as it has explained it so far, is that "[t]he core issue in this proceeding is whether Respondent *was candid with this Court* in making sworn statements," not whether his statements to the public were truthful or merit discipline. *Id.*

(emphasis in original). And, the Commission points out, attorneys do not have a constitutionally protected right to make false statements to courts. *See, e.g.*, *Idaho State Bar v. John Doe*, 551 P.3d 1, 28 (Idaho 2024), *reh'g denied* (July 12, 2024) ("In sum, the First Amendment does not grant license to an officer of the court to make false allegations and reckless insinuations about others in court filings and other professional settings without consequence.").

Respondent also believes that sanctioning him would violate our Indiana Constitution's separation of powers because, he contends, the Commission is attempting "to usurp authority from the executive branch by curtailing what the executive branch can say to the people." Respondent's Mot. to Dismiss at 19. But, again, the Commission clarifies in response that it does not seek to sanction Respondent's statements to the people; it seeks to sanction his statement to us.

As to both these constitutional arguments, Respondent remains free to raise them as defenses to the Commission's claims, as bases for narrowing the Commission's claims, as objections to evidence, or as bases for our consideration when reviewing the claims and defenses after a hearing. But we decline to dismiss the complaint based on those constitutional grounds at this stage. Instead, the Commission will have an opportunity to introduce evidence and supporting arguments for its contention that it can show—by clear and convincing evidence and within the confines of our state and federal constitutions—that Respondent violated the Rules of Professional Conduct. Only after that will we consider whether the claims fail based on Respondent's constitutional arguments.

Because we deny Respondent's motion to dismiss, we must decide what to do next.

## Hearing Procedure

Our rules permit us, but don't require us, to appoint a hearing officer who can conduct a hearing, receive evidence, make findings of fact and conclusions of law in a hearing officer's report, and "[d]o all things necessary and proper to carry out their responsibilities under this Rule."

Admis. Disc. R. 23(13). After the hearing officer submits a report, we then review the evidence and evaluate the law ourselves. And while we don't defer to the hearing officer's report, it "receive[s] emphasis due to the unique opportunity for direct observation of witnesses." *Matter of Hill*, 144 N.E.3d 184, 188 (Ind. 2020).

Our typical practice is to appoint a hearing officer sua sponte after the Commission files a complaint. When we appoint a hearing officer, we usually appoint just one, but our rules contemplate the option for a panel of multiple officers. Admis. Disc. R. (23)(14)(f)(4) ("Only the Supreme Court and its duly appointed hearing officer *or hearing officers* shall have jurisdiction to issue any orders or processes in connection with a disciplinary case brought under this Rule." (emphasis added)).

Here, Respondent proposes it would be prudent to appoint a panel of three hearing officers to protect against a public perception that political considerations could unduly influence a single officer. *See* Respondent's Reply in Supp. of Mot. to Dismiss at 3 n.1. That proposal borrows an idea from our process for judicial discipline, where it is our typical practice to use three hearing officers. Admis. Disc. R. 25(VIII)(I). Recently, the Commission proposed this approach for an attorney discipline complaint, although we denied that request after the respondent opposed it. *See* Order, *Matter of Hill*, No. 19S-DI-156 (Ind. Apr. 29, 2019). Adding additional hearing officers creates expense for which respondents may ultimately be responsible if they are found to have violated our rules, Admis. Disc. R. 23(21)(a), so we are especially cautious when considering such a request over respondents' objections. But here, it is the respondent who proposes a multiple-member panel, and we conclude that it is an appropriate approach given the circumstances.

We therefore appoint three distinguished public servants from our northern, central, and southern regions to serve as a hearing officer panel: the Honorable Cale J. Bradford, the Honorable Nancy H. Vaidik, and William G. Hussmann, Jr. Judges Bradford and Vaidik are in active service on the Indiana Court of Appeals, and they both have been elected by their colleagues to serve as their court's Chief Judge in the past. Mr. Hussmann is a practicing attorney whose public and private sector experience

includes serving as a U.S. Magistrate Judge, as a Deputy Attorney General, and as a Staff Attorney with the Indiana Disciplinary Commission.

Our rules empower the hearing officers to "[d]o all the things necessary and proper to carry out their responsibilities." Admis. Disc. R. 23(13)(c). That includes conducting a pre-hearing conference to discuss various procedural matters "and any other matters as may aid in the disposition of the action." *Id.* R. 23(14)(e). Both when we exercise original jurisdiction and appellate jurisdiction, we sometimes direct parties to mediation. *See* Ind. Trial Rule 60.5(A) (providing that in mandate actions, "[a]t any time in the process, the dispute may be submitted to mediation by agreement of the parties or by order of the Supreme Court or the special judge"); Ind. Appellate Rule 20 ("The Court on Appeal may, upon motion of any party or its own motion, conduct or order appellate alternative dispute resolution."). We encourage the panel to discuss with the parties whether mediation (with either a senior judge or private mediator) is appropriate in this case. While we are only at the pleadings stage, the parties' discussion of the claims through their early filings is already voluminous. And up to this point, their submissions, though extensive, reveal very little factual disagreement. That disagreement is vehement, but it also seems narrow, so there may not be much to litigate through a hearing. At bottom, they agree about what Respondent said; they disagree about what he thought and meant. And as both sides describe the dispute, it seems to boil down primarily to whether Respondent really meant it when he told us he was accepting responsibility for violating the Rules of Professional Conduct.

Even there, they still seem to agree on key points. All seem to agree that accepting responsibility means admitting a mistake and committing to do better. And nobody seems to quarrel with the notion that many things could be true all at once: Respondent could believe in the righteousness of his office's investigation; he could believe that political motivations inspire his political adversaries to complain about him to the Commission; he could believe that our Court should make changes to its disciplinary process to address his concerns; but *all while still acknowledging he made a mistake because his public comments about his office's investigation of Dr.*

*Bernard violated our Rules of Professional Conduct because they risked prejudicing a proceeding against her*, as he told us before.

The parties reached agreement once before on multiple, more complicated and contentious issues surrounding Respondent's comments about his office's investigation of Dr. Bernard. The current singular, simpler dispute stems from that agreement. So with help from a mediator, they might at least explore whether they can get back on the same page, either through an additional agreed public statement or through some other means. And if they do reach an agreement, they might also explore the parameters of future commentary about that resolution to avoid ending up back in the same place.

In the previous disciplinary matter, Respondent expressed concern that such a forward-looking agreement might amount to a "gag order" limiting his right to explain himself to his constituents. Verified Resp. to Pet. Requesting Conditional Agreement for Discipline and Affidavit to Be Released for Public Access at 1 ("Attorney General Rokita believes a gag order is something an attorney general cannot agree to because it is a disservice to the directness and accountability Hoosiers deserve from elected officials and otherwise is not something government should impose on people."). That's fair enough, and the Commission has reiterated here that it does not seek to impinge on his constitutionally protected speech rights. Nor do we. But beyond the First Amendment, there is also the first rule of holes: when you're in one, stop digging. *Minser v. DeKalb Cnty. Plan Comm'n*, 170 N.E.3d 1093, 1095 (Ind. Ct. App. 2021). And when our state's highest court must enlist our profession's most respected leaders as hearing officers to litigate at considerable expense whether our state's attorney general was sincere when saying sorry, we're in a hole—so we should all do what we can at least to stop making things worse.

Finally, both sides have filed discovery-related motions. Given our other procedural rulings, we grant the Commission's Motion to Stay Discovery Until Ruling on Respondent's Motion to Dismiss and Appointment of Hearing Officer, and we refer all discovery disputes to the hearing panel. Respondent also filed a motion to dismiss in lieu of an

answer to the Commission's complaint, and because we deny that motion, we direct him to file an answer to the complaint within thirty days of this opinion.

## Conclusion

For these reasons, we:

(1) deny Respondent's Motion to Dismiss;

(2) appoint a hearing officer panel of the Honorable Cale J. Bradford, the Honorable Nancy H. Vaidik, and William G. Hussmann, Jr., with Judge Bradford to serve as the presiding officer;

(3) grant the Commission's Motion to Stay Discovery Until Ruling on Respondent's Motion to Dismiss and Appointment of Hearing Officer;

(4) refer to the hearing officers all discovery matters, including the Commission's Motion for Protective Order and Respondent's Motion to Compel Discovery; and

(5) order Respondent to file an answer to the Commission's complaint within thirty days of this opinion.

Rush, C.J., and Massa, J., concur.
Slaughter, J., concurs with separate opinion.
Goff, J., concurs with separate opinion.

ATTORNEYS FOR RESPONDENT

Paul O. Mullin

E. Ryan Shouse

Lewis and Wilkins LLP

Indianapolis, Indiana

James Ammeen

Ammeen & Associates LLC

Indianapolis, Indiana

Gene C. Schaerr

H. Christopher Bartolomucci

Schaerr Jaffe LLP

Washington, DC

ATTORNEYS FOR INDIANA SUPREME COURT
DISCIPLINARY COMMISSION

Adrienne L. Meiring. Executive Director

Stephanie K. Bibbs, Deputy Director of Litigation

Indianapolis, Indiana

**Slaughter, J., concurring.**

Though I have concerns with deferring our consideration of the respondent's motion to dismiss, I have elected to join the Court's opinion in full. I write separately to explain my concerns.

My first preference was to hear argument on the pending dismissal motion and assign this matter to a hearing officer (or panel of officers) only if the complaint survived dismissal. The Court, instead, opts to appoint hearing officers now and denies without prejudice the motion to dismiss. *Ante*, at 3. I understand our without-prejudice denial to mean that the hearing officers may consider the respondent's objections—what the Court calls his "defenses" to the complaint, *ibid.*—and that we, too, may revisit the motion after the panel completes its work. Though not my first choice, I am okay with this procedural approach, which, as my friend Justice Goff explains, finds support in our disciplinary rules and our precedent. *Post*, at 2–3. In addition, I welcome the Court's express recognition that the hearing panel is free to direct the parties to mediation in hopes of resolving this case before either side expends further time and money in litigation.

The Court frames the central issue for the hearing panel—and ultimately for us—as a factual question: Whether the respondent "really meant it when he told us he was accepting responsibility for violating the Rules of Professional Conduct" in the first disciplinary proceeding. *Ante*, at 14. This question is important, to be sure, but it is not the only question. Another key question, in my view, is whether further professional sanction is warranted now—beyond the initial sanction in the first matter—if the respondent did not "really" mean it then.

**Consider the following scenario.** A person is charged with several crimes. She knows that if she is convicted on all counts, she could spend considerable time in prison, maybe the rest of her life. She believes in her heart of hearts that she did nothing wrong. Yet she also recognizes the reality that going to trial is an expensive endeavor, and that a jury may not see things her way. To avoid the cost and uncertainty of trial, she pleads guilty to a subset of the charges, with the understanding that the prosecutor will ask the court to impose a modest sentence. The trial judge takes

her plea and goes through a litany of questions ensuring she knows her rights and understands she is waiving them. The judge also establishes a factual basis for the plea. The judge requires her to admit under oath to the particular facts of the pleaded offenses. The judge then accepts her plea, establishing her admitted guilt, and imposes a modest sentence per the parties' agreement. She serves her sentence and, upon release, tells friends, family—anyone who will listen—that she is innocent and did nothing wrong. The prosecutor gets wind of her after-the-fact denials and weighs bringing a further criminal charge against her—this time for perjury, namely, for lying during the plea hearing when she told the judge under oath that she was admitting to the first charges.

Maybe the prosecutor concludes that a further prosecution is a good use of his office's (and a court's) time and resources. And maybe a jury concludes she did not "really" mean it during the plea hearing in the first criminal case and finds her guilty of this latest offense.

**Consider an alternative scenario.** The prosecutor learns of her about-face denials and ignores them. Maybe he recognizes that her prior convictions are a *fait accompli*. They are not going away, and she is not bringing collateral legal proceedings seeking to have them go away. She did her time and is going on with her life. And maybe the prosecutor, mindful of her status as a convicted person who paid her debt to society, is content to let things be.

These rival scenarios illustrate a key question I have with this case: If the respondent did not "really" mean it—if he crossed his fingers behind his back—when he accepted responsibility for violating our professional-conduct rules the first time, should we find yet another violation this time?

Of course, a prosecutor retains sole discretion over whether to bring criminal charges at all, and a trial court cannot curb this discretion. In contrast, the Indiana Constitution vests our Court with original and exclusive jurisdiction over the practice of law, Ind. Const. art. 7, § 4, which includes implementing and enforcing rules governing how lawyers must conduct themselves. We empower the disciplinary commission to enforce these

rules on our behalf. The commission's actions, unlike a prosecutor's, are subject to our oversight and, ultimately, our approval.

Given our Court's supervisory role over attorney-discipline matters, I would have preferred to address my question before sending this matter to a hearing panel. But my preferred sequence did not carry the day. So be it. That said, from my vantage point, this question will remain so long as this matter is before us.

**Goff, J., concurring.**

Although I agree with the Court's decision, I write separately for three reasons: first, to explain why appointing a panel of three hearing officers in this matter is particularly appropriate; second, to express my reservations about suggesting mediation as a possible avenue to resolving this case; and, third, to explain why hearing argument on Respondent's Motion to Dismiss would be improper.

As the Court explains, there is ample authority to support its decision to grant Respondent's request to appoint a panel of three hearing officers in this matter. And it makes good sense to exercise that authority here. Despite the headline-grabbing political overtones, this case is about Respondent's alleged professional misconduct, and, if that alleged professional misconduct is proven, it will fall to the members of this Court to determine what impact that misconduct should have on his professional license. Appointing three distinguished members of the bench and bar to serve as hearing officers is particularly appropriate in this case, which involves conduct at the intersection of law and politics. The incredible power vested in a state attorney general can only be wielded by a person who has taken an oath to constrain their conduct to meet the professional licensing requirements for members of the state bar.

At the same time, the political role assumed by many state attorneys general in contemporary America creates tension with licensing obligations that they assume as members of their state's bar. When a licensed attorney, entrusted with the full legal power of a state, advocates (or legally implements) divisive policies advocated by national partisans, their statements and actions can, in some circumstances, be *both* politically popular within their state *and* violative of its rules of professional conduct for attorneys. And because the legal power of a state attorney general is so great, such popular but unprofessional conduct can hurt real people and impede official processes. When that happens, people harmed by such conduct will look to the attorney-discipline process for relief.

Appointing a panel of three distinguished members of the bench and bar to consider this case provides the best available means of reconciling this tension. While their recommendation will not be universally accepted,

the deliberative and collaborative process they engage in to reach it will foster confidence in the integrity and independence of our disciplinary process as a whole.

I also join the Court's decision to direct the hearing officers to determine whether mediation might be appropriate in this case. In my view, the chief benefit of this approach would be cost savings. Hoosier taxpayers have reportedly already spent hundreds of thousands of dollars on legal fees to defend Respondent against allegations of professional misconduct.[1] And the politically divisive issue of abortion, which underlies the disputes in this case, is emblematic of the tension existing at the intersection of professional licensure and partisan politics. Because the underlying issue is viewed by much of the public in the most absolute and uncompromising terms, any decision made through the adversarial process is destined to be viewed as illegitimate by some.

Still, I have my reservations about this approach to the disciplinary process. As the Court points out, there is no rule precluding mediation in the context of attorney discipline. But there isn't a rule establishing it as part of our process either. I fear that adding such a provision could be seen, and perhaps used, as a means of getting around the disciplinary process. In my view, it's important for our disciplinary process to apply equally to a sole practitioner and a powerful statewide office holder. Nevertheless, our rules empower the hearing officers to "[d]o all things necessary and proper to carry out their responsibilities" in disciplinary proceedings. Ind. Admission and Discipline Rule 23(13)(c)(4). If the hearing officers here consider mediation appropriate under the circumstances, and if both parties are amenable to that process, then I see no reason to interfere.

---

[1] *See generally* Casey Smith, *Indiana Taxpayers Pay Nearly $500K for Attorney General Todd Rokita's Disciplinary Defense*, Ind. Capital Chronicle (June 26, 2025) https://indianacapitalchronicle.com/2025/06/26/indiana-taxpayers-pay-nearly-500k-for-attorney-general-todd-rokitas-disciplinary-defense.

Finally, although my friend Justice Slaughter would prefer to hear argument rather than deny the Respondent's Motion to Dismiss, I believe that denial is the *only* course of action available in this case. To be sure, dismissal isn't completely unprecedented. The Court cites two cases where we have either dismissed a complaint, or the Commission moved to dismiss its complaint because we declined to appoint a hearing officer. *Ante*, at 9–10 (citing Order, *Matter of Nathaniel Lee*, No. 49S00-0705-DI-195 (Ind. Aug. 1, 2007); Order, *Matter of Aaron Haith*, No. 49S00-9707-DI-422 (Ind. Dec. 19, 1997)). But, in my opinion, we should treat this precedent with caution. In *Haith*, our predecessors on the Court elected not to appoint a hearing officer, thereby effectively dismissing the case before it began. And in both cases, dismissal resulted without yielding a formal process for entertaining motions to dismiss, strongly suggesting the practice shouldn't be embraced. While prior members of the Court may have felt otherwise (when considering two cases out of thousands of cases considered throughout the history of our process), it's worth noting this case is far more public, and involves a statewide elected official. Following such limited precedent in this context stands in tension with the overwhelming weight of our precedent, and it will undermine confidence in the independence of our Disciplinary Commission which must be seen as administering attorney discipline without fear or favor.

And as the Court points out, dismissing Respondent's Motion to Dismiss does not preclude him from making the arguments he raises during his disciplinary hearing. During the hearing, the Disciplinary Commission bears the burden of proving any alleged violation by clear and convincing evidence. Respondent's arguments should be understood as defenses that he has asserted against those allegations. If the Commission carries its burden, convincing the hearing panel to find in its favor, that finding would be subject to this Court's review.

For these reasons, I fully concur in the Court's decision.